Larry Zerner (SBN 155473)
Email: Larry@ZernerLaw.com
Law Offices of Larry Zerner
1801 Century Park East, Ste. 2400
Los Angeles, CA 90067
(310) 773-3623
(310) 388-5624 Fax

Attorneys for Plaintiff Rick Sloane

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICK SLOANE<br><br>                     Plaintiff,<br><br>        vs.<br><br>KARMA ENTERPRISES, INC., a California Corporation; ENTERTAINMENT 7, a business entity, form unknown, EMILIO FERRARI aka AMAD BEDI, an individual,<br><br>                     Defendants. | Case No.: CV 08-05094 MMM (VBKx)<br><br>PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT<br><br>DATE: April 13, 2009<br>TIME: 10:00<br>COURTROOM: 780 |

Table of Contents

I.  DEFENDANTS MOTION SHOULD BE DENIED BECAUSE IT RELIES SOLELY ON THE CONCLUSIONARY ALLEGATIONS OF EMILIO FERRARI ...............................................................................................1

II.  MR. FERRARI ADMITTED IN HIS DEPOSITION THAT HE DID NOT KNOW OR REMEMBER ANYTHING ABOUT THE DOCUMENTS HELD BY ENTERTAINMENT 7 AND KARMA ENTERPRISES ..........................................2

III. THE STATEMENTS IN MR. SLOANES RESPONSES TO INTERROGATORIES DO NOT "PROVE" NON-INFRINGEMENT BY DEFENDANTS. ...............................................................................................9

IV.  DEFENDANTS PREVIOUS SUBMISSIONS OF A FORGED DOCUMENT SHOULD BE VIEWED AS EVIDENCE OF GUILT ..........................................12

V.  ANY LIABILITY OF THE CORPORATE DEFENDANTS ALSO RUNS TO MR. FERRARI.........................................................................................14

VI.  IF THE COURT FEELS THAT THERE IS NO GENUINE ISSUE OF MATERIAL FACT AS TO THE INFRINGEMENT, THEN PLAINTIFF REQUESTS ADDITIONAL TIME TO RESPOND PURSUANT TO FED.R.CIV.P. 56(F) ...............................................................................16

**Plaintiff Opposition to Motion for Summary Judgment**

TABLE OF AUTHORITIES

**Cases**

*A&M Records v. Napster, Inc.,* 239 F.3d 1004, 1022 (9th Cir. Cal. 2001)............15

*Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 256, 106 S.ct. 2505, 91 L.Ed.2d 202
(1986)..................................................................................................................9

*Massey v. Cook*, 111 Fed. Appx. 930, 931 (9th Cir. Or. 2004) ...............................2

*United States v. Shanks*, 521 F.2d 83, 86 (7th Cir. Ind. 1975). ..............................13

*United States v. Shumway*, 199 F.3d 1093, 1104 (9th Cir. Ariz. 1999). ...................2

*Wilson v. United States*, 162 U.S. 613, 621 (U.S. 1896) ........................................13

**Statutes**

Fed.R.Civ.P.  56(e)...................................................................................................1

Fed.R.Civ.P. 56(f) ..................................................................................................16

Federal Rule of Evidence 602..................................................................................1

**Treatises**

*Nimmer on Copyright*.............................................................................................15

**Plaintiff Opposition to Motion for Summary Judgment**

## **MEMORANDUM OF POINTS AND AUTHORITES**

## **I. DEFENDANTS MOTION SHOULD BE DENIED BECAUSE IT RELIES SOLELY ON THE CONCLUSIONARY ALLEGATIONS OF EMILIO FERRARI**

The gravamen of Defendants' Motion for Summary Judgment is that Defendants have not infringed the copyright to Plaintiff's movies within three years prior to the filing of the Complaint.  However, the only evidence Defendants present in support of the motion is a conclusory declaration by Emilio Ferrari.  In the declaration, Mr. Ferrari simply states:  "There has been no distribution or copies made of any of the eight Sloane Movies at issue in this action by Entertainment 7, Karma Enterprises, Inc. ("Karma") or me during the three years prior to the time Sloane filed the complaint."  Ferrari Decl. Par. 2.

However, this is merely a conclusion and without supporting facts, cannot be considered adequate justification for the granting of the motion.

Federal Rule of Evidence 602 states that "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."

Fed.R.Civ.P.  56(e) states: "A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."

There is nothing in Mr. Ferrari's declaration which would establish that he has personal knowledge of what films were distributed in the past three years or that he is competent to testify on these matters.   Is he making this statement from his own memory?  If so, how does he know it's correct?  Does he keep a database or spreadsheet which shows all of the films his companies licensed in the past three years?  Mr. Ferrari doesn't say.  Did he review any documents or files in his possession to come to this conclusion?  Mr. Ferrari doesn't say.

As the statements relied on by Mr. Ferrari are merely conclusory and not facts that would be admissible in evidence, the declaration should not be recognized by the court. See, *United States v. Shumway*, 199 F.3d 1093, 1104 (9th Cir. Ariz. 1999).  See also, *Massey v. Cook*, 111 Fed. Appx. 930, 931 (9th Cir. Or. 2004) (conclusory affidavits do not establish a genuine issue of material fact).

## II.  <u>MR. FERRARI ADMITTED IN HIS DEPOSITION THAT HE DID NOT KNOW OR REMEMBER ANYTHING ABOUT THE DOCUMENTS HELD BY ENTERTAINMENT 7 AND KARMA ENTERPRISES</u>

On March 14, 2009, three days before he signed the declaration at issue in this motion, Plaintiff took Mr. Ferrari's deposition.  During the deposition, Mr.

Plaintiff Opposition to Motion for Summary Judgment

Ferrari refused to provide any substantive answers as to his knowledge of Defendant's documents or Defendants' activities.

Here are some pertinent excerpts from the deposition transcript that makes it clear that Mr. Ferrari does not have sufficient knowledge to state whether or not Defendants infringed Plaintiff's movies within the past 3 years. True and correct copies of the pages from the deposition transcript are attached to the declaration of Larry Zerner as Exhibit 1. (References are to Exhibit Page and Line Number.)

"Q   As you are sitting here, you can't give me the name of any employee of Entertainment 7?

A   Like I said -- I already answered that question. I don't remember.

Q   You don't remember?

A   No. " **Page 7:22-8:2**

* * *

Q   From 2001 to 2008, did you make any effort to sell Mr. Sloane's movies?

A   I have no idea. I don't remember. You have to look at the documents we submitted. I don't remember what we did for every movie eight years ago.

Q   Did you take it to the markets?

A   I have no idea. During the time we had it, it's possible. The movies that are not -- even though we have rights to something if there is nothing available the

**Plaintiff Opposition to Motion for Summary Judgment**

chance we took it to market  are probably not.  I have no idea.  There is no way for me to remember.  **Page 10-19-11:6**

&ast; &ast; &ast;

Q   What documents would you look at to determine how much money Entertainment 7 made in 2008?

A   I don't know.

Q   You do not know what documents you would look at?

A   No.  Page **12:19-25**

&ast; &ast; &ast;

Q   Do you know how long do you keep your contracts with the people who buy films from you?

A   I don't remember.

Q   Do you have a policy?

A   I don't remember.

Q   Do you throw them out?

A   I don't remember. **13:12-18**

&ast; &ast; &ast;

Q   When you get contracts with people how are they kept?  Are they kept on a computer or in a file?

A   I don't know.

---

Page 4

Q   If you are on the phone with a distributor, and they said, hey, our contract says it I have to pay you $10,000, and you thought it was different, where would you go look?

A   I don't know.

Q   You don't know?

A   No.  **Page 14:5-15**

\* \* \*

Q   Let me ask you this:  How do you know what films have been sold to what territories?

A   I don't know.  **Page 15:13-15**

\* \* \*

Q   You said that you haven't made any of Mr. Sloane's films in the past four years since Payless; is that correct?

A   Whatever the documents you have.

Q   What documents did you look at to determine that information?

A   The documents you have.

Q   Well, I know, but how do you know whether or not you might have sold it to Hungry or India or England?

A   We give you all the documents we have for the sales agreement.

Q   Where do you keep those documents?

**Plaintiff Opposition to Motion for Summary Judgment**

A   In the office.

Q   Where?

A   I have no idea.

Q   You have no idea?

A   No.

Q   Do you have a file drawer in the office?

A   I don't know.

Q   How big is your office?

A   I don't know.

Q   You don't know how big your office is?

A   No, I don't.

Q   Would you give me an estimate on the size of your office?

A   No, I can't. **Page 16:2 - 17:3**

* * *

Q   Is there someone in your office that's in charge of keeping track of what films have been sold where?

A   I don't know.  **Page 18:7-10**

* * *

Q   Is there someone in your office that is in charge of generally knowing where the films have been sold, not Mr. Sloane's films.  All of your films?

A    I don't know.

Q    Do you have a procedure when a contract is signed with a licensee what happens to that contract?

A    I don't know.

Q    When you are at the markets do you sign deals with licensees?

A    Sometimes.

Q    When you do, what do you do with those contracts?

A    I don't remember.

Q    Do you throw them away?

A    I don't know.

Q    Where did you find Mr. Sloane's contract?

A    I don't remember.

Q    Did you find it, or did someone else find it?

A    I don't remember.  **Page 18:17-19:13**

* * *

Q    If I ask you to provide me with all the sales agreement that Entertainment 7 entered into in the last year where would the documents be.

A    I don't know.

Q    Where would you look for those documents?

A    I don't know.

**Plaintiff Opposition to Motion for Summary Judgment**

Q   Who would you ask to find those documents?

A   I don't know.  **Page 20:5-12**

These admissions from Mr. Ferrari make clear that he is not competent to give any testimony about Defendants' sales activities.  Mr. Ferrari claims not to know where any sales agreements are kept, or how to find those documents.  He said that he doesn't know what happens to sales agreements he enters into, he doesn't even know if they get thrown away.  He doesn't remember where he found Plaintiff's documents or if he found them himself.  He doesn't know where in his office he keeps sales agreements, doesn't know if he has a file drawer in his office, and could not even give an estimate as to the size of his office.   Accordingly, there is simply no way that Mr. Ferrari can state that Defendants did not engage in infringement.  If he doesn't know where the documents are, or how to find them, he couldn't possibly know that answer to these questions.

Now certainly it is possible, if not probable, that Mr. Ferrari's repeated claims of ignorance are false.  That Mr. Ferrari does, in fact, know the answers to these questions, but decided to feign ignorance because if he answered the questions honestly he would have to admit to the infringement.  But Mr. Ferrari cannot have it both ways.  He cannot come into a deposition and claim not to know anything about Defendants' documents, and then three days later sign a declaration in which he simply gives a conclusory statement that Defendants did not engage in

Plaintiff Opposition to Motion for Summary Judgment

infringing activities during the past three years and expect the court to take him at his word.   As Defendants state in their motion -- the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 256, 106 S.ct. 2505, 91 L.Ed.2d 202 (1986).

Mr. Ferrari's declaration is merely conclusory and the evidence obtained during his deposition shows that Mr. Ferrari does not (or at least claims not to) have information about Defendants infringing activities.  Therefore, Mr. Ferrari's declaration should be disregarded and, consequently, Defendants have not met the initial burden of demonstrating the absence of a genuine issue of material fact.

### III. <u>THE STATEMENTS IN MR. SLOANES RESPONSES TO INTERROGATORIES DO NOT "PROVE" NON-INFRINGEMENT BY DEFENDANTS.</u>

Defendants argue in the Motion for Summary Judgment that "Plaintiff has no proof of any actionable infringement [by Defendant]."  See, Motion, at 4:15, 5:10, and 6:13.   The "evidence" Defendants cite for these statements are Undisputed Facts ¶16, 29, and 42.  These Undisputed Facts then simply refer generally to Plaintiff's Response to Interrogatories, without reference to any specific question and answer.

But a review of the interrogatories shows that Mr. Sloane did present evidence of infringement.

**Plaintiff Opposition to Motion for Summary Judgment**

For example, Interrogatory No. 1 stated: "State all facts that support or evidence Plaintiff's allegations that Defendant Karma Enterprises, Inc. infringed the copyrights for each of the Sloane Movies, identify the dates of the alleged infringement, identify all documents concerning those facts and identify all persons having knowledge of those facts."

Mr. Sloane's Response to Interrogatory No 1 began as follows:

"<u>Response to Interrogatory No. 1</u>

A. *Vice Academy 3:*

i) The film Vice Academy 3 was advertised on the Karma Enterprises website and in the catalog that was handed out at the AFM.   Entertainment 7 entered into a contract with Retrohouse Media to license rights to this film and the contract stated that the payment would go into the Karma Enterprises Account. Karma licensed rights to, among others, Universe Laser & Video and Payless Entertainment in Australia.   Plaintiff has also received WGA and/or DGA foreign residuals from this film indicating that the films are currently being shown overseas.

ii) The dates of the infringement are within the past three years. The exact dates are only known by Emilio Ferrari.

iii) Documents concerning these facts are pages from the Karma website.  Pages from the catalog handed out at AFM. The contract between

Entertainment 7 and Retrohouse Media; videocassette boxes from Universe Laser & Video; the contract between Entertainment 7 and Payless Entertainment; WGA and DGA residual documents.

iv)  Persons having knowledge of these facts are, Rick Sloane, Emilio Ferrari, Bill Wilder, Employees at Universe Laser & Video and at Payless Entertainment.

Discovery is continuing and this response will be updated upon receipt of further information. "See Exhibit "1" to Schewe Declaration, page 3.

This was only the response for the film Vice Academy 3 as to Karma Enterprises.  Plaintiff gave similar responses for seven of the eight films as to similar questions to Entertainment 7, Karma Enterprises and Emilio Ferrari and these responses can be seen in the remainder of the Responses to Interrogatories. Exhibit 1 to Schewe Declaration, p. 2-18.  These responses cannot be seen as proof of non-infringement.

Defendant is apparently focusing on the fact that Plaintiff has not yet ascertained the exact date that Defendants illegally licensed the films to others. Defendant has not yet determined the exact date because Mr. Ferrari has refused to turn over the incriminating documents and because he was willfully evasive during his deposition.  But nothing in the Responses to Special Interrogatories can be considered as "proof of no actionable infringement" as stated by Defendants and

**Plaintiff Opposition to Motion for Summary Judgment**

the statement in the motion to the contrary is simply another attempt by Defendants to mislead the court. [1]

## IV. DEFENDANTS PREVIOUS SUBMISSIONS OF A FORGED DOCUMENT SHOULD BE VIEWED AS EVIDENCE OF GUILT

On February 9, 2009, Defendants filed a Motion for Leave to File a First Amended Answer and Counter-Claim. The basis for Defendants' motion was the claim that in December 2008, Mr. Ferrari discovered a September 2001 letter ("the 2001 Letter"), signed by Mr. Ferrari and Mr. Sloane, in which Mr. Sloane purportedly granted Entertainment 7 a seven year extension of time to sell the Sloane movies. As part of the motion, Defendants filed a declaration, signed by Mr. Ferrari which stated that in September 2001 he worked out a deal with Mr. Sloane that would allow his company to sell Mr. Sloane's movies for an additional 7 years. Attached to Declaration as Exhibit 1 was what purported to be a September 2001 letter signed by Mr. Sloane and Mr. Ferrari. Judicial Notice of this fact is hereby requested.

However, this letter was a crude forgery. The signatures on the 2001 Letter were simply cut and pasted from the 1999 license agreement between Rick Sloane and A Plus Entertainment, a document which was filed with the court <u>by</u>

---

[1] Plaintiff admits that it has so far not been able to find evidence of infringement of the film *Blood Theater* by Defendants. However, discovery is continuing.

**Plaintiff Opposition to Motion for Summary Judgment**

Defendants on September 8, 2008 as Exhibit 2 to Defendants Motion to Dismiss. Judicial Notice of this fact is hereby requested.

Mr. Sloane has had the two documents examined by Bart Baggett, a Forensic Document Examiner.  Mr. Baggett has confirmed that the signature on the 2001 Letter is a forgery and was cut and pasted from the 1999 agreement.  See, Declaration of Bart Baggett and exhibits thereto.

The fact that Mr. Ferrari would file a forged document in this case should greatly trouble the court.

First, it means that Mr. Ferrari cannot be trusted in anything he says.  Now that there is no doubt that Mr. Ferrari is a liar and perjurer, the court should disregard his declaration in its entirety.

Second, the court should consider the reason Mr. Ferrari perjured himself and filed a forged document.  If Defendants did not distribute the films in the past three years, as they claim, there would be no reason to present a forged document to prove that they had the right to distribute the Sloane films.  For over 100 years, courts have held that fabrication of evidence should be seen as evidence of guilt. "The destruction, suppression or fabrication of evidence undoubtedly gives rise to a presumption of guilt to be dealt with by the jury. *Wilson v. United States*, 162 U.S. 613, 621 (U.S. 1896).  Fabrication of evidence of innocence is strong evidence of guilt. *United States v. Shanks*, 521 F.2d 83, 86 (7th Cir. Ind. 1975).

**Plaintiff Opposition to Motion for Summary Judgment**

The very fact that Mr. Ferrari risked a jail sentence by filing a perjured declaration and a forged document should, all by itself, be seen as convincing evidence that Defendants engaged in significant infringement, and needed justification if the infringement was discovered.

Three, the court should consider the serious implications that arise from a finding that Defendants forged a document and submitted a perjured declaration. If Defendants are providing false documents, and repeatedly lying in deposition, what are the odds that the Defendants would respond honestly to a request for production of documents?  The answer is, of course, zero.  There is <u>no chance</u> that Defendant is going to produce any damaging evidence to Plaintiff.

If the Court were to grant Defendants motion, despite the overwhelming proof that Mr. Ferrari is a perjurer and forged documents, it would send a horrible message to those plaintiffs and attorneys who abide by the rules.  The lesson would be that it doesn't matter if you're honest, and it doesn't matter if you follow the rules.  The party that is best able to lie, and stall, and obstruct justice, will be the victor, regardless of the truth.

## V.  <u>ANY LIABILITY OF THE CORPORATE DEFENDANTS ALSO RUNS TO MR. FERRARI.</u>

One of the defenses presented by Mr. Ferrari is that he cannot be held personally liable because all of his activities occurred through his corporations,

**Plaintiff Opposition to Motion for Summary Judgment**

Entertainment 7 and Karma Enterprises.  However, running copyright infringement through a business does not shield a person from personal liability for the offense. Mr. Ferrari owns 100% of both Entertainment 7 and Karma.  Ferrari Deposition **Page 6:17-22.**  Mr. Ferrari also stated that he is the only person at Entertainment 7 who has the authority to sign licensing contracts and that he makes the final decision on which movies to sell.  Ferrari Deposition, **Page 9:12-24.**

A defendant is vicariously liable for copyright infringement if he "has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities. *A&M Records v. Napster, Inc.,* 239 F.3d 1004, 1022 (9th Cir. Cal. 2001).

As stated in *Nimmer on Copyright*:

> If a corporation commits an act of infringement, its individual officers and its parent corporation will be liable as related defendants if there is a substantial and continuing connection between them and the corporation with respect to the infringing acts.  Thus, an officer of an infringing corporation will be personally liable if he either participates personally (and other than merely in his corporate capacity) in the manufacture and sale of an infringing article, or if he uses the corporation as an instrument to carry out his willful and deliberate infringements or if he is the dominant influence in the corporation and determined the policies that result in infringement, or

**Plaintiff Opposition to Motion for Summary Judgment**

if he derived financial benefit from the infringing activities either as a major shareholder or through other means, or on the basis of some combination of the above criteria."

*Nimmer* at §12.04[A][3][d].

As Mr. Ferrari admitted both that he has the ability to supervise the infringing activity (because he is the only person with authority to bind the company) and because he has a direct financial interest in these activities (as the sole owner of the company), if the corporate defendants are liable, then Mr. Ferrari is also liable.

## VI. <u>IF THE COURT FEELS THAT THERE IS NO GENUINE ISSUE OF MATERIAL FACT AS TO THE INFRINGEMENT, THEN PLAINTIFF REQUESTS ADDITIONAL TIME TO RESPOND PURSUANT TO FED.R.CIV.P. 56(F)</u>

If the court accepts Mr. Ferrari's declaration as evidence and is inclined to grant the motion, then Plaintiff respectfully requests that the court either deny the motion or order a continuance to allow Plaintiff time to conduct further discovery pursuant to Fed.R.Civ.P. 56(f).

56(F) states: "If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion;  (2) order a continuance to enable affidavits to be

obtained, depositions to be taken, or other discovery to be undertaken; or  (3) issue any other just order."

Plaintiffs have been diligent in pursuing discovery against Defendants. However, Defendants have taken all available steps to delay this discovery.

An initial round of Requests for Admissions, Requests for Production of Documents and Special Interrogatories were served on Defendants on or about November 5, 2008.  Zerner Decl. Par. 2  Responses to this discovery were mailed on December 11, 2008.  On December 18, 2008, Mr. Zerner sent an email to Defendants then attorney, Sanford Passman, asking about available deposition dates for Mr. Ferrari.  Mr.  Passman did not respond to this email.  On January 9, 2009, having not heard from Mr. Passman, Plaintiffs served a deposition notice for Mr. Ferrari on January 27, 2009, along with an email again asking Mr. Passman for an available date for the deposition.  Zerner Decl. Par. 3.

Later on January 9, 2009 Mr. Zerner received an email from Mr. Passman that said: "Larry, I have been sub'd out. You will hear from the new lawyer next week." Zerner Decl. Par. 4.

On January 15, 2009, Edward Schewe was substituted in as Defendants' counsel.  Later that day, Mr. Zerner telephoned Mr. Schewe to discuss the case and asked him about the January 27 deposition.  Mr. Schewe said that Mr. Ferrari

**Plaintiff Opposition to Motion for Summary Judgment**

would not be available then.  Mr. Zerner asked Mr. Schewe to provide an alternate date, but he was unable to do so.  Zerner Decl. Par. 5.

On January 21, 2009, Mr. Schewe served an Objection to Notice of Deposition of Emilio Ferrari which stated that Defendants were objecting to the deposition because Plaintiff did not clear the date with counsel before selecting the date.  This is despite the fact that Defendants had so far refused to provide Plaintiff with any date for Mr. Ferrari's deposition.  Zerner Decl. Par. 6.

After receiving the Objection notice, Mr. Zerner again spoke to Mr. Schewe and asked him for a date that Mr. Ferrari would be available.  Mr. Schewe said that Mr. Ferrari was busy for the next few weeks and would not give a date certain for his deposition.   Therefore, on January 29, 2009, Mr. Zerner sent an email to Mr. Schewe requesting an in-person meet and confer, pursuant to Local Rule 37-1. Zerner Decl. Par. 7.

On February 5, 2009, Mr. Zerner  and Mr. Schewe held a meet and confer pursuant to Local Rule 37 in an attempt to confer in good faith regarding the discovery dispute.  During the meeting, Mr. Schewe said that Mr. Ferrari would not make himself available for deposition prior to April 6, 2009.  A date that was just three weeks prior to the May 1, 2009 discovery cut-off.  Zerner Decl. Par. 8.

**Plaintiff Opposition to Motion for Summary Judgment**

On February 17, Plaintiff filed a motion seeking to compel the deposition of Emilio Ferrari.  The matter was set for hearing on March 10, 2009.  Zerner Decl. Par.  9.

On February 25, a telephonic hearing on the motion was held with Magistrate Judge Victor Kenton.  After hearing argument, the Court ordered Mr. Ferrari to be deposed no later than March 14, 2009.  On March 3, 2009, Mr. Schewe sent a letter to Mr. Zerner stating that Mr. Ferrari would not appear for his deposition in person, but would only appear by telephone.  Mr. Zerner told Mr. Schewe that he would not agree to take Mr. Ferrari's deposition by telephone.  On March 9, 2009, Defendants filed an *ex parte* application for a protective order to allow a telephonic deposition of Mr. Ferrari.  The *ex parte* application was denied by Magistrate Judge Kenton that same day.  Zerner Decl. Par. 11.

On March 14, 2009, almost three months after first requesting a deposition date, Mr. Zerner took Mr. Ferrari's deposition.  At the deposition, as discussed *infra*, Mr. Ferrari claimed complete ignorance of Defendants records and documents.  Zerner Decl. Par. 12.  True and correct copies of pertinent pages from Mr. Ferrari's deposition transcript are attached to the Zerner Declaration as Exhibit 1.

As a result of Mr. Ferrari's feigned ignorance, Plaintiff has now scheduled a deposition and document production pursuant to Fed.R.Civ.P. 30(b)(6) for the

**Plaintiff Opposition to Motion for Summary Judgment**

person most knowledgeable at Entertainment 7 on the issues that Mr. Ferrari claimed ignorance during his deposition.  This deposition is currently scheduled for April 23, 2009.  However, Mr. Schewe has already indicated that Defendants will probably object to this deposition, which means that Plaintiff will be forced to bring another motion to compel.  Zerner Decl. Par. 13.

In the event that the court feels that Defendants motion may have merit, then Plaintiff requests additional time to complete discovery

DATED: March 27, 2009          LAW OFFICES OF LARRY ZERNER


By: _____
      Larry Zerner
      Attorney for Plaintiff

Plaintiff Opposition to Motion for Summary
Judgment